BOSKO PETRICEVIC          8443
Attorney at Law, LLLC
P.O. Box 38, Honolulu, Hawaii 96810
Telephone:                (402) 301-3716
E-mail:                   boskolaw@gmail.com
Attorney for Plaintiff
ALEXA DUNNING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALEXA DUNNING, | ) CIVIL NO. |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| HAWAII STATE DEPARTMENT OF | ) |
| EDUCATION.; DOE PERSONS 1-10; | ) COMPLAINT; DEMAND FOR |
| DOE CORPORATIONS 1-10; DOE | ) TRIAL BY JURY; SUMMONS |
| PARTNERSHIPS 1-10; ROE "NON- | ) |
| PROFIT" CORPORATIONS 1-10; | ) |
| DOE UNINCORPORATED | ) |
| ORGANIZATIONS  1-10; | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

HERE COMES Plaintiff ALEXA DUNNING **("Plaintiff")**, by and through her

undersigned attorney BOSKO PETRICEVIC, ATTORNEY AT LAW LLLC, and hereby

submits her COMPLAINT against **Defendant HAWAII STATE DEPARTMENT OF**

**EDUCATION** ("**Defendant**"), and alleges on information and belief, as follows:

## I.  INTRODUCTION

Plaintiff brings this action for wrongful termination, disability discrimination and

retaliation, sex and gender discrimination and other related causes of actions against the

above captioned Defendant, as follows:

## II. **PARTIES**

1.       Plaintiff ALEXA DUNNING **("Plaintiff"),** at all relevant times mentioned in this Complaint, is a resident of the State of Hawaii.

2.       At all times relevant herein, Defendant **HAWAII STATE DEPARTMENT OF EDUCATION** ("Defendant" or "DOE" or "Employer") is an employer within the meaning of the TITLE VII, ADA and PDA is a State of Hawaii governmental agency organized and existing under the laws of the State of Hawaii and performs its functions in the entire State of Hawaii.

3.       Upon information and belief, and at all times relevant herein, Defendant's employees, agents and/or representatives, were acting within the course and scope of their duties as employees, agents and/or representatives of Defendant; therefore, Defendant is liable for the intentional and/or tortious and/or wrongful conduct of said employees, agents and/or representatives pursuant to the doctrine of Respondeat Superior and/or principles of Agency.

4.       All events done by all of the above-named Defendants described herein occurred within the City and County of Honolulu, State of Hawaii, and within the jurisdiction and venue of United States District Court for the District of Hawaii.

5.       Defendants DOE PERSONS 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10 and ROE GOVERNMENTAL ENTITIES 1-10, are sued herein under fictitious names for the reason that, after thoroughly

investigating the facts of the action, said Defendants' true names and identities are presently unknown to Plaintiff, except upon information and belief, that they are connected in some manner with the named Defendants and/or were the agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, distributors, subcontractors or contractors and/or owners, lessees, assignees, licensees, of the named Defendants and/or were in some manner presently unknown to the Plaintiff engaged in the activities alleged herein and/or were in some manner responsible for the injuries or damages to Plaintiff which was a proximate cause of injuries or damages to Plaintiff and that their "true names, identities, capacity, activities and/or responsibilities" are presently unknown to Plaintiff or his attorney. To ascertain the full names and identities of Defendants DOE PERSONS 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10 and ROE GOVERNMENTAL ENTITIES 1-10, Plaintiff's counsel has investigated the facts alleged herein through *inter alia*, interviews of Plaintiff and records and files submitted by Plaintiff. When the true names and capacities are ascertained, through appropriate discovery, Plaintiff will move to amend his Complaint to state the true names.

### III.    <u>JURISDICTION AND VENUE</u>

6.    Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

7.      Defendant was a resident of other jurisdictions other than Hawaii at all times relevant to this Complaint, as described above, however doing business in Hawaii by operating many groceries stores by name of Safeway on islands of Hawaii.

8.      Subject matter jurisdiction is proper under 28 U.S.C. § 1331 since it involves federal question. All of the Plaintiff's claims arise under **federal** law, specifically Title VII (42 U.S.C. § 2000e, et seq.), Americans with Disabilities Act (ADA) and Pregnancy Discrimination Act (PDA) including the U.S. Constitution.

9.      Jurisdiction is also proper under 28 U.S.C. § 1367 – which grants federal courts supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c), since all of the events or omissions giving rise to the claims occurred in this district.

11.     Personal jurisdiction is proper in this Court because the above-named Defendant has minimum contacts with the State of Hawaii because Defendant does business in State of Hawaii and as such have direct contact with the State of Hawaii.

12.     Lastly, Plaintiff has exhausted her administrative remedies in EEOC No. 486-2024-00254when EEOC has granted Plaintiff a right to pursue a court action on March 24, 2025 by issuing a notice of right to sue letter.

13.     Also, this Court has diversity jurisdiction over all the parties and subject matter of this Complaint under 28 U.S.C. § 1332 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. 1367 with remedy for the violation of any rights, privileges or immunities secured by the United States Constitution or federal statutes, considering that the underlying relevant acts occurred in Honolulu, Hawaii (as described below) and that the amount in dispute exceeds $100,000 exclusive of interest and costs and Plaintiff requests various equitable relief herein.

14.     As such, this Court has jurisdiction over the parties and subject matter of this Complaint.

15.     All events material to this Complaint occurred on the Island of Oahu, within the City and County of Honolulu, in the State of Hawaii, and within the jurisdiction of the U.S. District Court for the District of Hawaii.

## IV.      FACTS

16.     Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

17.     Plaintiff was discriminated against by the Defendant due to her being a female who was pregnant and gave birth at the start of the 22-23 academic school year.

18.     The practices of the Defendant demonstrate a flagrant violation of Title VII of the Civil Rights Act of 1964, ADA and PDA.

19.     Defendant's claimed ability to fire a female employee due to childbirth violates Federal law. It exhibits a systemic issue that not only affects Plaintiff, but also all female employees who have had or plan to have children.

20.     Defendant discriminated against Plaintiff based on her sex, gender and pregnancy. Defendant admitted fault in not informing Plaintiff of her options.

21.     Defendant even offered Plaintif a Settlement Agreement that did not address all of her concerns with being retroactively terminated, nor did it address the systemic issues within Defendant's rules and policies.

22.     Plaintiff was employed at Barbers Point Elementary School (BPES), beginning in 2019 till the end of her pregnancy in 2022.

23.     Plaintiff attempted to change schools in February of 2022, but was not hired at any new schools.

24.     Plaintiff spoke to the Principal, Sandy Calio, after the transfer period ended, about her disdain for Plaintiff (Plaintiff was the Faculty Representative and regularly had to address faculty concerns with her). Plaintiff knew she did not want her at BPES.

25.     Plaintiff implored Principal Calio to make sure Plaintiff was displaced from BPES, even though DOE policy would have her remain at the school if there were any open teacher positions (which there were).

26.     This confirms that the DOE creates policies and procedures, yet does not adhere to them upon administrative requests (even though there are no listed exceptions). At the same time, employees are held accountable for violating any policies and procedures.

27.     Principal Calio regularly made it known to staff that she was well connected with other DOE administrators, officers, and Complex Area Superintendent (CAS). She mentioned that she was friendly with the PRO, Jarnett Lono, who is responsible for assigning Bargaining Unit 5 (BU5) staff to their positions, and Sean Tajima, Complex Area Superintendent (CAS).

28.     On 5/12/22, Sandy Calio informed Plaintiff through email that she had been placed at a new school. The email said:

"Aloha Alexa,

I was notified that you will be assigned to Kaimiloa Elementary next school year. I have included Principal Anela Pia in this email so she can introduce herself and let you know if there are any summer trainings or information you need to know.

I wish you luck with your pregnancy and next school year. Kaimiloa is a good school and has a great staff.

Mahalo,
Sandy Calio

Principal, Barbers Point Elementary School"

29.     The sentence "I wish you luck with your pregnancy and next school year. Kaimiloa is a good school and has a great staff.", demonstrated the first discrimination that Plaintiff experienced from Defendant.

30.     Plaintiff's former principal, Principal Calio, informed her new intended principal, Principal Pia, of her pregnancy. This was a medical condition that Plaintiff had never informed Principal Calio of, or any other DOE employer, for that matter.

31.    The relationship between Plaintiff and Principal Calio was not one of camaraderie; it was one of contempt and condescension. Principal Calio did not speak to Plaintiff about her pregnancy or offer any congratulatory statements while employed at BPES.

32.    This "well wish" was not meant to spread kindness, but rather to disclose information that could be used to discriminate against Plaintiff as an employee, like being given an undesirable teacher placement. It should be noted that neither Plaintiff nor Anela Pia responded to this discriminatory email.

33.    This premature and unauthorized disclosure of Plaintiff's pregnancy was the first experience of discrimination and violation of workplace protections afforded to pregnant employees under state and federal law.

34.    Before her birth, Plaintiff met with Principal Pia on 5/20/22 to inform her of her pregnancy and discuss her teaching assignment. Plaintiff worked with Kaʻimiloa staff to secure a sub for when she gave birth and intended to work up until labor.

35.    Plaintiff gave birth before her due date.

36.    Plaintiff informed Principal Pia of her daughter's birth via text message. Principal Pia offered congratulations and asked for a photo to share with staff. The employer provided no information regarding the leave procedure.

37.    Plaintiff went to work on 8/2/22 to sign summer stipend work pay and discuss leave options with SASA. The SASA informed Plaintiff that leave would be put in every week, on Plaintiff's behalf.

38.     Plaintiff was never informed of her eligibility for FMLA, the Hawaii Family Leave Law, or any other leave options.

39.     The Defendant was fully aware of Plaintiff pregnancy and due date before Plaintiff's Leave.

40.     On 8/2/22, Plaintiff also went to work to attempt to collect new student information, like IEPs, to create a 5-day lesson plan, which is a contractual obligation regardless of the reason for leave. Plaintiff was told to go home and not to worry about the lesson plans by staff members at Ka'imiloa, who graciously took care of that for Plaintiff.

41.     During Plaintiff's leave, she had a work computer that she used to check/answer emails and review student IEPs. Plaintiff attended an online meeting on 9/27/22 with her then principal and other faculty members to address changes to classroom assignment/ reorganization of the SpEd Department at Ka'imiloa.

42.     Plaintiff was also enrolled in a DOE course at Kapiolani Community College, paid for by the DOE and only for DOE teachers to gain Sheltered Instruction Credits.

43.     The employer claims that Plaintiff was not employed, but during her maternity leave, Plaintiff was continuously carrying out employee obligations.

44.     On 9/28/22, Plaintiff was surprised to be contacted by Principal Pia, through phone call and email, to correct Plaintiff's leave form dates, on her 7/26/22-10/03/22 leave form, due to Plaintiff's leave being exhausted before the original 9/30/22 end date.

45.     Plaintiff came in on 10/4/22 to correct her leave paperwork to reflect her appropriate amount of leave accrued (7/26/22-9/7/22) and apply for the Maternity Leave Sharing Program.

46.     Plaintiff was informed by the SASA that this would cover the remainder of her leave. At no point was Plaintiff offered or given information about FMLA or Hawaii Leave by the employer.

47.     On 10/20/22, Principal Pia informed Plaintiff, during an in-person meeting, that PRO Lono had informed her that Plaintiff could not use any of her accrued leave and that I Plaintiff was going to be retroactively terminated, which would affect Plaintiff's previous paychecks, insurance coverage, tenure, and more.

48.     On 10/24/22, Plaintiff called PRO Lono to receive more information, as she had not received anything in writing about her termination. PRO Lono informed Plaintiff that mistakes by the employer were made, and Plaintiff was now given correct information, but her leave would still not be approved.

49.     However, due to the circumstances, Plaintiff was being offered to keep her current probationary status, which meant Plaintiff would not have to start probation all over again, and Plaintiff could keep her accrued sick leave.

50.     At no point was Plaintiff offered or given information about FMLA, Hawaii Family Leave Law, or any other leave options by the employer.

51.     On 10/24/22, Plaintiff also called Andrea Eshelman, Hawaii State Teacher Association (HSTA) Deputy Executive Director, to find out what was going on, in a legal

sense, and what the Union could do to support Plaintiff. In the phone call, Eshelman informed Plaintiff that nothing could be done and that Plaintiff was even fortunate that she was going to be able to retain her years of service towards tenure, and that typically that would be taken away as well.

52.    Plaintiff's Sick Leave was submitted every week by the School Administrative Services Assistant (SASA) and then approved by her principal at the time. The SASA told Plaintiff that she would handle her situation, and if Plaintiff did not have the necessary leave, then she would help Plaintiff with applying for Shared Leave (a program used by teachers to lend/borrow sick days).

53.    This mistake, made by the employer, was not caught or addressed until 10/20/22. This is when the employer "retroactively terminated" Plaintiff and falsely claims that they effectuated the termination/inability to assign dated back to 07/26/22.

54.    Plaintiff did not receive any written documentation regarding her retroactive termination until Plaintiff requested it on 10/24/22 after a phone conversation with Personnel Regional Officer (PRO), Jarnett Lono.

55.    DOE claims that if a teacher is not physically present at school on the 1st date of the contract period while on probationary status, then teachers are terminated, loses their probationary status and accumulated sick leave, and may not be guaranteed reemployment.

56.    With the egregious errors made in regards to Plaintiff's sick leave, the DOE offered Plaintiff to keep her probationary status, accumulated sick leave, and reemployment.

57.    The DOE does not even follow its procedures.

- 11 -

58.    At the time of Plaintiff's childbirth, Plaintiff was working towards her sixth semester of probation. Plaintiff previously had two consecutive annual overall ratings of 'Effective'. Plaintiff was meeting the requirements of the DOE to gain tenure.

59.    Plaintiff even signed a contract on 07/11/22 to continue employment with the DOE.

60.    Plaintiff gave birth to her daughter on 7/24/22, two days before the start date of employment. Plaintiff was not discharged from the hospital until after 7/26/22.

61.    This was 11 days before her anticipated due date. A due date is just that, anticipated, but not guaranteed.

62.    DOE's contract enables them to commit pregnancy discrimination under the guise of contract violation, with grounds for termination.

63.    Plaintiff gave birth before her due date and the start of the school year. The employer retroactively terminated Plaintiff's position, violating her rights as a woman who had just given birth. The employer discriminated against Plaintiff due to her sex, gender female and disability by retroactively terminating Plaintiff after childbirth.

64.    While this entire ordeal was happening, Plaintiff wanted to leave the DOE.

65.    Plaintiff wanted to quit. Plaintiff was a first-time mother with the added stress of an employer trying to terminate her employment using discriminatory practices.

66.    In addition to the depression, this brought upon major consequences of wage repayment (in the thousands), threat of out-of-pocket costs for dozens of newborn doctor

- 12 -

appointments (due to loss of insurance), lack of wage increase (denied compression step adjustment), and a decrease in Plaintiff's retirement savings.

67.    As an elementary teacher who takes care of young children, the DOE denied Plaintiff the opportunity to be her best self as she took care of her young child. The DOE struggles every year to fill teacher positions, and this is one of the many reasons why they will continue to struggle if systemic changes do not occur.

68.    On 11/17/22, Plaintiff followed up with Ms. Lono about a phone call discussion where Plaintiff was inquiring about a mistake in the new offered contract, which did not give Plaintiff the recently acquired step increase.

69.    On 11/29/22, Lono informed Plaintiff that the salary adjustment only applied to teachers who were actively employed on the last teacher workday of school year 21-22 and continued employment on the first teacher workday of school year 22-23. Plaintiff was actively employed on the last teacher workday of school year 21-22.

70.    Due to DOE's above described actions, Plaintiff was penalized in terms or conditions of her employment because she required time away from work on account of disability resulting from pregnancy, childbirth, or related medical conditions.

71.    It is unlawful discriminatory practice to discharge a female from employment or to penalize her in terms, conditions, and privileges of employment because she requires time away from work for disability due to and resulting from pregnancy, childbirth, or related medical conditions.

72.    Plaintiff was penalized for giving birth and being hospitalized due to the birth on the first working day of school.

73.    Plaintiff was physically unable to attend school due to being hospitalized due to her pregnancy and childbirth. And despite that, Plaintiff was retroactively terminated 3 months later by the DOE.

74.    DOE never informed Plaintiff of FMLA by the school or district, which she was entitled to as an employee.

75.    This discrimination by Plaintiff cost her tens of thousands of dollars in the form of repayment to payroll, lack of step increase, termination of insurance, and delayed tenure.

76.    I submitted my Step 1 Grievance to Complex Area Superintendent Sean Tajima on 1/10/2023. I argued that the Department of Education not only violated the collective bargaining agreement, but also Federal Law- Title VII of the Civil Rights Act of 1964. I listed my requested remedies and waited for a response.

77.    Plaintiff met on 8/7/23, with Sean Bacon; Assistant Superintendent Office of Talent Management; Teri Sakanashi; State Personnel Regional Officer Personnel Assistant, and Jodi Paris; HSTA UniServ Director.

78.    On 8/15/23, Teri Sakanashi informed Plaintiff that DOE would audit her old school, BPES, for her leave. BPES had not correctly documented Plaintiff's leave when she transferred schools.

79.    Leave audits found that Plaintiff was missing 12 sick leave days (days that could have also been used for my maternity leave). Another example of the employer's inability to operate with care and proper procedure.

80.    Plaintiff is still unable to apply for shared leave, accrued interest on delayed wages, and has no support in working with the Hawaii Employer-Union Trust Fund (EUTF) to remedy the situation.

81.    DOE still has their policy on the books they claim it allows them to fire female teachers for missing school because they are in hospital giving birth.

82.    This type of discrimination should not be faced by any other pregnant person. There was also never an offer for FMLA or Hawaii Family Leave Law, or any other leave options to be retroactively applied. The DOE needs to be held accountable for their discriminatory actions, and Plaintiff was discriminated against, overpowered, harassed, and abused by the DOE.

83.    DOE's internal procedures allow for such flagrant violations of the law to occur. This is no longer about just Plaintiff's experiences.

84.    Plaintiff's story will be heard and considered, and hopefully, promote change. This includes every woman who has gone through the same experience or is fearful of such a situation. The Hawaii DOE teachers are mainly women. These practices are inherently discriminatory against pregnant women.

85.    Based on the above-described actions, Defendant discriminated against Plaintiff because of her pregnancy and childbirth and disabilities in

violation of the Americans with Disabilities Act of I 990 (ADA) and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008, as amended, Title VII and PDA.

86.     As a result of Defendant's above-described actions, Plaintiff has suffered actual losses or damages as a result in excess of $500,000.00.

87.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered substantial economic injury, loss of esteem and standing in the community, severe emotional distress, severe mental trauma, humiliation, mortification, and embarrassment.

## V.     CAUSES OF ACTIONS

**COUNT 1:        DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF I 990 (ADA) AND THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT (ADAAA) OF 2008, AS AMENDED**
(AGAINST ALL DEFENDANTS)

88.     Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

89.     Based on the above-described actions, Defendant discriminated against Plaintiff because of her disabilities in violation of the Americans with Disabilities Act of I 990 (ADA) and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008, as amended.

90.    It is unlawful discriminatory practice to discharge a female from employment or to penalize her in terms, conditions, and privileges of employment because she requires time away from work for disability due to and resulting from pregnancy, childbirth, or related medical conditions

91.    As a result of Defendant's above-described actions, Plaintiff has suffered actual losses or damages as a result in excess of $500,000.00.

92.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

93.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

94.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

95.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

## COUNT 2:  ADA - RETALIATION

(AGAINST ALL DEFENDANTS)

96.     Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

97.     On numerous occasions, Plaintiff has made complaints against her disability discrimination to the management of Defendant.

98.     Based on the above-described actions, Defendant discriminated against Plaintiff because of her disabilities in violation of the Americans with Disabilities Act of I 990 (ADA) and the Americans with Disabilities Act Amendments Act (ADAAA) of 2008, as amended.

99.     Plaintiff has suffered numerous discriminatory and retaliatory acts from in retaliation of her complaint against discrimination.

100.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

101.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

102.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

103.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

### COUNT 3:  VIOLATION OF Title VII (42 U.S.C. § 2000e, et seq.)
(AGAINST ALL DEFENDANTS)

104.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

105.    Title VII of the Civil Rights Acts of 1964 states that because of or on the basis of pregnancy, childbirth, or related medical conditions Plaintiff shall be treated the same for all employment related purposes.

106.    Based on the above-described actions, Defendant discriminated against Plaintiff in violation of the Title VII.

107.    It is unlawful discriminatory practice to discharge a female from employment or to penalize her in terms, conditions, and privileges of employment because she requires time away from work for disability due to and resulting from pregnancy, childbirth, or related medical conditions

108.    As a result of Defendant's above-described actions, Plaintiff has suffered actual losses or damages as a result in excess of $500,000.00.

109.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

110.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

111.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

112.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

## COUNT 4:  TITLE VII - RETALIATION

(AGAINST ALL DEFENDANTS)

113.    116. Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

114.    On numerous occasions, Plaintiff has made complaints against her disability discrimination to the management of Defendant.

115.    Based on the above-described actions, Defendant discriminated against Plaintiff in violation of the Title VII.

116.    Plaintiff has suffered numerous discriminatory and retaliatory acts from in retaliation of her complaint against discrimination.

117.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

118.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

119.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

120.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

## COUNT 5: VIOLATION OF PREGNANCY DISCRIMINATION ACT (PDA)
(AGAINST ALL DEFENDANTS)

121.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

122.    The federal Pregnancy Discrimination Act (PDA) states that because of or on the basis of pregnancy, childbirth, or related medical conditions Plaintiff shall be treated the same for all employment related purposes.

123.    Based on the above-described actions, Defendant discriminated against Plaintiff in violation of the PDA.

124.    It is unlawful discriminatory practice to discharge a female from employment or to penalize her in terms, conditions, and privileges of employment because she requires time away from work for disability due to and resulting from pregnancy, childbirth, or related medical conditions

125.    As a result of Defendant's above-described actions, Plaintiff has suffered actual losses or damages as a result in excess of $500,000.00.

126.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

127.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

128.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

129.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

## COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(AGAINST ALL DEFENDANTS)

130.    Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

131.    Defendant's wrongful conduct was intentional.

132.    Defendant's wrongful conduct was unreasonable and/or outrageous, committed without just cause or excuse and beyond all bounds of decency.

133.    Defendant knew or should have known that their wrongful conduct was likely to cause injury.

134.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

135.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

136.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

137.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

138.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered loss of esteem, emotional distress, severe mental trauma, humiliation, mortification, and embarrassment.

139.    Plaintiff is entitled to general, special, punitive and treble damages as a result of Defendant's conduct.

## COUNT 7: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(AGAINST ALL DEFENDANTS)

140.    Plaintiff reiterates and incorporates by reference the preceding paragraphs of this Complaint as though set forth fully herein.

141.    Defendant's wrongful conduct was negligent.

142.    Defendant's wrongful conduct caused physical injury and/or mental condition constituting negligent infliction of emotional distress.

143.    Defendant's wrongful conduct was negligent, grossly negligent, unreasonable, committed without just cause or excuse.

144.    Defendant knew or should have known that their wrongful conduct was likely to cause injury.

145.    Plaintiff has suffered emotionally and financially as a direct result of Defendant's actions.

146.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has sustained substantial damages, including, but not limited to economic loss and emotional distress and is therefore entitled to recover special, general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

147.    Due to Defendant's actions, Plaintiff has also suffered severe emotional distress, mental trauma and illness and many other special and general damages as proven at trial.

148.    Plaintiff is entitled to recover damages from Defendant, together with prejudgment interest and attorneys' fees and costs.

149.    As a result of Defendant's above-described actions, Plaintiff was damaged in an amount to be proven at trial.

150.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered loss of esteem, emotional distress, severe mental trauma, humiliation, mortification, and embarrassment.

151.    Plaintiff is entitled to general, special, punitive and treble damages as a result of Defendant's conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting the following relief on all causes of action as follows:

A.    On all Counts against ALL Defendants;

B.    For an award of special, economic, consequential and general damages to Plaintiff from ALL Defendants, jointly and severally, in amount proven at trial;

C.    Punitive damages, as the facts aforesaid constitute extreme and outrageous behavior which exceeds all bounds usually tolerated by decent society. In committing the above acts and omissions, Defendant acted wantonly and/or oppressively and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations and/or there has been some willful misconduct that demonstrates that entire want of care which would raise the presumption of a conscious indifference to consequences, justifying an award of punitive or exemplary damages in an amount to be proven at trial;

D.    That this Court enter a declaratory judgment that Defendant has violated the rights of Plaintiff;

E.    That this Court award Plaintiff compensatory damages, proximately caused by Defendant's tortious and abusive conduct, all in an amount to be proven at trial;

F.    That this Court award Plaintiff all of her attorney's fees and costs of this suit herein as well as prejudgment and post-judgment interest;

G.     That this Court award Plaintiff damages in excess of 500,000.00 including compensatory damages equal to the amount of losses it has sustained and will sustain, exemplary damages, and other and further relief that the court may deem appropriate.

H.     That this Court award and enter judgment in their favor and against Defendant for compensatory damages in an amount in excess of $500,000.00 that is sufficient to compensate Plaintiff for her actual, consequential, and incidental losses, including lost financial support sustained as a result of Defendant's wrongful actions, plus interest, costs, reasonable attorney fees, and such other relief that this Court deems just and equitable.

I.     That this Court order other appropriate injunctive relief.

J.     That this Court award Plaintiff such other and further relief both legal and equitable as this Court deems just, necessary and proper under the circumstances.

DATED: Honolulu, Hawaii; June 14, 2025

/S/ *BOSKO PETRICEVIC*
BOSKO PETRICEVIC, ATTORNEY AT LAW LLLC

Attorney for Plaintiff
ALEXA DUNNING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALEXA DUNNING, | ) CIVIL NO. |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| HAWAII STATE DEPARTMENT OF | ) |
| EDUCATION.; DOE PERSONS 1-10; | ) DEMAND FOR TRIAL BY JURY |
| DOE CORPORATIONS 1-10; DOE | ) |
| PARTNERSHIPS 1-10; ROE "NON- | ) |
| PROFIT" CORPORATIONS 1-10; | ) |
| DOE UNINCORPORATED | ) |
| ORGANIZATIONS  1-10; | ) |
| Defendants. | ) |
| | ) |

## DEMAND FOR TRIAL BY JURY

Please take notice that, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, Plaintiff demands a jury trial in this action on all issues and claims as stated

above.

DATED: Honolulu, Hawaii; June 14, 2025

/S/ *BOSKO PETRICEVIC*

BOSKO PETRICEVIC, ATTORNEY AT LAW LLLC

Attorney for Plaintiff
ALEXA DUNNING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALEXA DUNNING, | ) CIVIL NO. |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| HAWAII STATE DEPARTMENT OF | ) |
| EDUCATION.; DOE PERSONS 1-10; | ) SUMMONS |
| DOE CORPORATIONS 1-10; DOE | ) |
| PARTNERSHIPS 1-10; ROE "NON- | ) |
| PROFIT" CORPORATIONS 1-10; | ) |
| DOE UNINCORPORATED | ) |
| ORGANIZATIONS  1-10; | ) |
| Defendants. | ) |
| _____ | ) |

<u>SUMMONS</u>

STATE OF HAWAII:

HAWAII STATE DEPARTMENT OF EDUCATION:

You are hereby summoned and required to file with the Court and serve

BOSKO PETRICEVIC, ATTORNEY AT LAW LLLC, whose address is P.O. Box 38,

Honolulu, Hawaii, 96810, with an email address of boskolaw@gmail.com,  an answer

to the Complaint herewith served upon you, within twenty (20) days after service of this

summons upon you, exclusive of the day of service.  If you fail to do so, judgment by

default will be taken against you for the relief demanded in the Complaint.

This summons shall not be personally delivered between 10:00 p.m. and

6:00 a.m. on premises not open to the general public, unless a judge of the above-

entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED:    Honolulu, Hawaii, _____.

_____
CLERK OF THE ABOVE-ENTITLED COURT