IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| ALEXA DUNNING,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAII STATE DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | Case No. 25-cv-00242-DKW-RT<br><br>**ORDER GRANTING DEFENDANT DEPARTMENT OF EDUCATION’S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

On July 26, 2022, Plaintiff Alexa Dunning, a school teacher, did not turn-up for work on the first teacher workday of the school year. Dunning alleges there was good reason for this: she gave birth to a child on July 24, 2022, and, just two days later, she was still in the hospital with her newly-born child and, thus, unable to report for work. This event had consequences. By November 2022, Dunning had been “retroactively terminated” with pay withheld solely because she failed to show for work on July 26, 2022. In June 2025, Dunning filed this lawsuit against Defendant, the State of Hawai‘i Department of Education (DOE), alleging various forms of employment discrimination under Federal law and torts under State law.

Perhaps understandably, DOE does not move for summary judgment on any substantive ground related to the foregoing. Instead, on July 20, 2026, DOE moved for summary judgment on procedural grounds, including Dunning's failure to comply with the relevant claims-processing rule for timely initiating a charge of employment discrimination. DOE's arguments are straightforward—either (1) Dunning waited more than the permitted 30 days to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) following the Hawaiʻi Civil Rights Commission's (HCRC) rejection of the same charge, and/or (2) Dunning waited more than the requisite 180 or 300 days to file a charge with the EEOC after an alleged unlawful employment practice, such as her "retroactive termination". DOE also argues that Dunning's State law claims are barred by the Eleventh Amendment.

DOE is correct: the undisputed factual record clearly reflects that Dunning failed to timely pursue her claims with the EEOC. First, the record demonstrates that Dunning waited more than 30 days between HCRC's rejection of her charge and filing with the EEOC. This alone is reason to find her claims barred. Second, the HCRC and EEOC charges, as well as the Complaint in this case, reflect that the alleged unlawful employment practices here were Dunning's "retroactive termination" and repayment of wages, all of which are alleged to have occurred in 2022—more than 300 days before Dunning filed a charge with the EEOC in March

2024. This too is reason alone to find her claims barred. In addition, Dunning's arguments for why her claims were timely brought and/or for why the relevant claims-processing rule should not be applied are misplaced. Finally, the Court agrees that Dunning's State tort claims are barred by the Eleventh Amendment. Therefore, for the reasons discussed more fully below, although DOE's underlying conduct in this case appears, at best, insensitive to the clear and known practicalities of giving birth, the motion for summary judgment, Dkt. No. 36, is GRANTED.

## RELEVANT PROCEDURAL BACKGROUND

On June 14, 2025, Dunning initiated this lawsuit with the filing of a Complaint against DOE and various unidentified individuals and entities. Dkt. No. 1.[1] In her Complaint, Dunning brings seven claims related to her employment with DOE: (1) disability discrimination under the Americans With Disabilities Act (ADA), (2) retaliation under the ADA, (3) discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) arising out of her pregnancy, childbirth, and related medical conditions, (4) retaliation under Title VII, (5) discrimination under the Pregnancy Discrimination Act (PDA), (6) intentional infliction of emotional distress under State law, and (7) negligent infliction of emotional distress under State law.

On August 12, 2025, DOE filed an Answer to the Complaint. Dkt. No. 12. Among other defenses, DOE asserted that Dunning had failed to timely exhaust her

---

[1] DOE is the only named defendant, and the only one served. *See* Dkt. No. 1 at ¶ 2; Dkt. Nos. 7-8.

administrative remedies, and it was entitled to sovereign immunity. *Id.* at 5-6. Almost a year later, on July 20, 2026, DOE filed the instant motion for summary judgment. Dkt. No. 36. DOE argues that all of Dunning's claims are untimely, certain claims are unexhausted, and the claims under State law are barred by sovereign immunity. With respect to timeliness, DOE argues that Dunning's claims under Federal law (Claims 1-5) were untimely filed with the EEOC, while her State law claims (Claims 6-7) are untimely under the applicable statute of limitations. Dkt. No. 36-3 at 11-24. DOE also asserts, in a footnote, that Claims 6-7 are barred by sovereign immunity. *Id.* at 18 n.7.

Dunning opposes summary judgment. Dkt. No. 58. Although the arguments are far from a model of clarity, Dunning appears to argue that DOE "delay[ed]" asserting that her claims were untimely, DOE's allegedly unlawful conduct is "ongoing", DOE's "extended internal process[]" "bears on why [her] external filings took the form and timing that they did," she administratively exhausted all of her claims, and her State law claims are not untimely. *Id.* at 12-23. Dunning also argues that DOE has failed to show an entitlement to sovereign immunity. *Id.* at 22-23.

On September 25, 2026, DOE filed a reply in support of its motion for summary judgment. Dkt. No. 59. On October 1, 2026, the Court vacated the

hearing on DOE's motion, opting to decide the issues presented without one. Dkt. No. 61. This order now follows.

## SUMMARY JUDGMENT FACTS

The facts set forth below are those that are undisputed (and/or not properly disputed), material, and established by the factual statements and evidence submitted by the parties in support of, and in opposition to, the motion for summary judgment.

On July 11, 2022, Dunning signed a teaching contract with DOE titled, "Limited Term Appointment Agreement for Non-Tenured Teachers" (Agreement). Dkt. No. 37-9 at 5.[2] Pursuant to the Agreement, effective from July 26, 2022 until January 3, 2023, Dunning was appointed a "Probationary Teacher" at Kaimiloa Elementary School.[3] In signing the Agreement, Dunning agreed to "report for duty no later than the beginning date specified above." *Id.* Dunning had signed similar agreements for periods between (1) July 29, 2020 and July 28, 2021, and (2) July 28, 2021 and July 27, 2022. *Id.* at 1, 3. For these earlier agreements, Dunning was appointed a "Probationary Teacher" at Barber's Point Elementary School. *Id.* The Principal of Kaimiloa Elementary School, Angela Pia, was informed of Dunning's

---

[2]In citing the exhibits submitted in connection with the briefing on the motion for summary judgment, unless otherwise noted, the Court cites to the page numbers created by CM/ECF in the top right-hand corner of each document, *i.e.*, "Page 5 of 6".
[3]Pursuant to a contract between DOE and the Hawaii State Teachers Association, a teacher must serve "a minimum of six (6) semesters" on "probationary status". Dkt. No. 37-11 at 8.

transfer from Barber's Point Elementary School on May 10, 2022. Dkt. No. 37-13 at 1.

On July 26, 2022, Dunning did not "physically report to discharge her duties" as a teacher at Kaimiloa Elementary School. Decl. of Angela Pia at ¶ 7, Dkt. No. 37-5. Just two days earlier, on July 24, 2022, Dunning had given birth. Decl. of Alexa Dunning at ¶ 4, Dkt. No. 58-2. This birth occurred 12 days before Dunning's anticipated due date. *Id.* Pia was aware of Dunning's pregnancy, having met with her in May 2022 to discuss the same. *Id.* at ¶ 3. Further, on July 25, 2022, *i.e.*, *before* July 26, Dunning notified Pia of the birth in a text message. *Id.* at ¶ 4. Pia responded by asking for pictures of the baby. Dunning remained hospitalized through July 28, 2022. *Id.*

On October 10, 2022, Dunning reported to work at Kaimiloa Elementary School. Pia Decl. at ¶ 8. On October 24, 2022, Jarnett Lono, a Personnel Regional Officer for DOE's Leeward District on Oʻahu, informed Dunning by email that "(1) because she was a non-tenured teacher, she was not entitled to use her accumulated sick leave balance until she physically reported to work, which occurred on 10/10/22, (2) as a non-tenured employee, her Limited Term Appointment Agreement for Non-Tenured Teachers started when she physically reported to work, and that period was 10/10/2[2] to 7/26/23 and (3) her insurance coverage was affected by the failure to effectuate Contract for this period." Decl. of Jarnett Lono

at ¶¶ 1, 7, Dkt. No. 37-6.[4] On October 31, 2022, Maile Horikawa, a Human Resources Officer for DOE, informed Dunning that her "Application for Leave Sharing Program and Application for Maternity/Paternity Leave Sharing Program could not be processed because she was not a DOE employee for the period she had requested…." Decl. of Maile Horikawa at ¶¶ 1, 15, Dkt. No. 37-4. On November 29, 2022, Lono emailed Dunning, stating that "because she did not effectuate [the Agreement] beginning on July 26, 2022, she was overpaid when she was paid by the DOE on pay dates 8/5, 8/20, 9/5, 9/20, and 10/5/22." Lono Decl. at ¶ 11. Lono further stated that, because Dunning did not continue her employment on the first teacher workday of the 2022-23 school year, "she was not eligible for a salary adjustment" or step increase. *Id.*

On June 20, 2023, in an email to Lono, Dunning confirmed that she had signed a "new contract" with DOE, but she was "not in agreement with it[]" after her "retroactive termination." Dkt. No. 58-7 at 2. On August 1, 2023, July 30, 2024, July 29, 2025, and July 28, 2026, DOE issued Dunning a "Form 5" "Notification of

[4]DOE also states that, on October 19, 2022, it "came to light within the DOE" that, because Dunning "had not reported to discharge her duties" on July 26, 2022, she was not a DOE employee from that date through October 9, 2022, and the Agreement "was terminated." Dkt. No. 37 at ¶ 10. The Court observes that the cited evidence provides no support for these assertions. Among other things, none of the evidence states, or even implies, that, solely because Dunning did not report to work on July 26, 2022, she was not an employee of DOE or the Agreement was "terminated."

Personnel Action." Dkt. Nos. 58-10, 58-15, 58-16, 58-18.[5] On February 3, 2026, Dunning took a day of leave without pay. Dkt. No. 58-17.[6]

On November 15, 2023, Dunning submitted to HCRC a "Pre-Complaint Questionnaire – Employment" and attached typewritten statement. DOE's Concise Statement of Material Facts at ¶ 16, Dkt. No. 37; *see generally* Dunning's Concise Statement of Material Facts (no response to paragraph 16). On January 25, 2024, HCRC issued a letter to Dunning, stating that it "does not have jurisdiction to file a complaint of discrimination" for her because it was "clear" that Dunning was not "alleging suffering any adverse acts of discrimination based on your sex occurring within the 180-day period prior to the date of receipt" of her Pre-Complaint Questionnaire on November 15, 2023. Dkt. No. 37-18 at 1-2.

On March 26, 2024, Dunning filed a "Charge of Discrimination" with the EEOC (EEOC Charge). Dkt. No. 37-19. On April 1, 2024, the EEOC issued a "Notification and Acknowledgement of Dual-Filed Charge", stating that the EEOC Charge had been "dual-filed" with HCRC, and HCRC intended to "decline to file" because the EEOC Charge was "[u]ntimely." Dkt. No. 37-20. On May 31, 2024,

---

[5]Dunning further states that the Form 5s "reflect[ed] an incorrect salary step". Dkt. No. 58-1 at ¶ 18. However, the Form 5s alone, which is all that is cited in this respect, do not support the assertion that Dunning received or was placed-on an "incorrect salary step".

[6]Dunning further states that she was "forced to take" this day of leave without pay because she was "still missing five days of prorated leave that DOE never credited to her at the start of [school year] 2022-23." Dkt. No. 58-1 at ¶ 18. The Form 5 alone, though, provides no support for the assertions that Dunning was either "forced" to take this day of leave or that she was not "prorated leave" owed from an earlier time period.

Dunning filed an "Amended Charge of Discrimination" with the EEOC (Amended Charge). Dkt. No. 37-21.[7] On March 24, 2025, the EEOC notified Dunning that it was declining to proceed further with the EEOC Charge. Dkt. No. 37-22 at 1.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In particular, the movant's "initial responsibility" is to inform the district court of the basis for its motion and to identify those parts of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Id.*

However, a non-jurisdictional claims-processing rule, like the one DOE relies upon here with respect to Dunning's Federal claims, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982), is an affirmative defense for which DOE has the burden to prove, *see Taylor v. Sturgell*, 553 U.S. 880, 907 (2008); *Weil v. Elliott*, 859 F.3d 812, 815 (9th Cir. 2017). The same is true of the defense of

---

[7]Upon review, the only apparent "amendment" to the EEOC Charge is a minor, technical change to the name of Dunning's employer. *Compare* Dkt. No. 37-19, *with* Dkt. No. 37-21.

sovereign or Eleventh Amendment immunity. *Hill v. Blind Indus. & Servs. of Md.*, 201 F.3d 1186, 1186 (9th Cir. 2000). When the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). This means that the movant "must establish beyond controversy every essential element" of its claim. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted).

In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## **DISCUSSION**

DOE moves for summary judgment on all of Dunning's claims. With respect to her Federal claims, *i.e.*, Claims 1-5, DOE argues that, for various reasons, they are barred under the ADA and Title VII as having been untimely brought before the EEOC and/or HCRC. As for the State claims, *i.e.*, Claims 6-7, DOE argues, *inter alia*, that they are barred under principles of sovereign or Eleventh Amendment immunity. The Court addresses each of these arguments in turn below.

### 1. **Federal Claims (Claims 1-5)**

DOE argues that these claims are all barred because Dunning pursued them, if at all, before the EEOC and/or HCRC beyond the time limits set forth in the ADA

and Title VII. Dkt. No. 36-3 at 12-15. First, DOE argues that Dunning failed to file a complaint with HCRC or the EEOC within 180 days of an adverse employment action. Second, DOE argues that Dunning failed to file a complaint with the EEOC within 30 days of HCRC terminating her allegedly late-filed proceeding. Third, DOE argues that Dunning failed to file a complaint with the EEOC within 300 days of an adverse employment action.

Both Title VII and the ADA provide that an individual complaining of discrimination "shall" file a charge "within [180] days after the alleged unlawful employment practice occurred…except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency…such charge shall be filed…within [300] days after the alleged unlawful employment practice, or within [30] days after receiving notice that the State or local agency has terminated the proceedings under State or local law, whichever is earlier…." 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117 (providing that the "procedures" of Section 2000e-5 "shall" be the "procedures" of the ADA).

With these statutory provisions and the summary-judgment record in mind, the Court agrees that Dunning failed to timely pursue her claims before the EEOC. First, because Dunning initially filed a complaint with HCRC, the relevant time constraints of Section 2000e-5 are those requiring a charge to be filed within 300

days of an unlawful employment practice or 30 days of HCRC terminating the initial proceeding, "whichever is earlier". *See* 42 U.S.C. § 2000e-5(e)(1); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008).[8] Second, the summary-judgment record reflects that Dunning failed to comply with either of these constraints, let alone the "earlier" one.

The Court begins with the latter. On January 25, 2024, HCRC issued a letter to Dunning, stating, *inter alia*, that it "does not have jurisdiction to file a complaint of discrimination" for her. Dkt. No. 37-18 at 1-2. No one disputes that this letter terminated Dunning's initial proceeding under State law. Sixty-one days later, on March 26, 2024, Dunning filed her EEOC Charge. Dkt. No. 37-19. Clearly, therefore, the EEOC Charge was filed more than 30 days after notice of HCRC's termination of the initial proceeding. Notably, Dunning does not argue otherwise, never even mentioning this issue in her opposition. *See generally* Dkt. No. 58. Therefore, whether or not this event is the later or earlier of the two relevant time constraints under Section 2000e-5(e)(1), this alone is reason to find Dunning's claims under both the ADA and Title VII as having been untimely filed with the EEOC.

Dunning's claims, however, are also untimely under the 300-day requirement. As just mentioned, the EEOC Charge was filed on March 26, 2024. This meant that

---

[8]The Court, thus, disagrees with DOE that, because Dunning did not pursue a charge with HCRC within 180 days, her claims are barred.

any alleged unlawful employment practice must have occurred on or after May 31, 2023, *i.e.*, within 300 days of March 26, 2024. None of the relevant discriminatory acts or practices alleged in the EEOC Charge, though, are within this time period. Instead, therein, Dunning alleged that, between September and November 20*22*, she was told that she would be "retroactively terminated", she would need to "repay wages", "reimburse insurance", and "excluded from an organizational wide pay increase". Dkt. No. 37-19 at 2. Clearly, by her own admission, these all occurred outside of the 300-day period. In the EEOC Charge, Dunning also alleged that she "believe[d]" a "Settlement Agreement" to be "discriminatory", with the agreement allegedly being offered in September 20*23*, *i.e.*, *within* the 300-day period. *Id.* However, in her briefing here, Dunning neither argues that the Settlement Agreement rendered the EEOC Charge timely, nor provides a single piece of evidence directed toward the same or indicating that the Settlement Agreement constituted an "unlawful employment practice" for purposes of the ADA or Title VII. *See generally* Dkt. Nos. 58, 58-1. Therefore, the Court finds this event to be irrelevant in the calculation.

Nonetheless, in her opposition, Dunning maintains that her claims were timely filed with the EEOC for other reasons. First, Dunning appears to argue that DOE "forfeit[ed]" any argument premised upon timeliness because, despite having "every fact necessary to raise [the issue]", it did not exercise "due diligence" in

asserting the defense. Dkt. No. 58 at 12-14. This argument, however, is divorced from the record. Notably, contrary to Dunning's assertion, the Complaint does not recite "in detail" the dates of the HCRC filing, the EEOC Charge, or the contents of the same, which might have allowed DOE to file a motion to dismiss, rather than a motion for summary judgment, earlier in these proceedings. Instead, the Complaint says almost *nothing* about these matters, only alleging that, in March 2025, the EEOC issued a right-to-sue letter. *See* Dkt. No. 1 at ¶ 12. Further, DOE timely asserted the defenses discussed in its summary judgment motion in its Answer, Dkt. No. 12 at 5, and, therefore, preserved them *See* Fed.R.Civ.P. 12(b); *cf. Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) (explaining that, ordinarily, "a defense is lost if it is not included in the answer or amended answer."). And finally, Dunning offers no authority for the proposition that a defendant must assert a summary judgment argument as part of a motion to dismiss at the risk of waiver, at least when it has been raised in an answer, like here.

Second, citing the Lilly Ledbetter Fair Pay Act, Dunning argues that DOE's discriminatory conduct is "ongoing" because, from 2023 to 2026, it issued her Form 5s "reflecting the incorrect salary step derived from its 2022 conduct". Dkt. No. 58 at 14-16. While this argument has a number of flaws, most fundamentally, the Lilly Ledbetter Fair Pay Act does not apply here. As Dunning acknowledges, the Lilly Ledbetter Fair Pay Act applies when an individual is subject to or affected by an

allegedly "discriminatory compensation decision or other practice". *Id.* at 15 (citing 42 U.S.C. § 2000e-5(e)(3)(A)). Although the parties cite no case law from the Ninth Circuit Court of Appeals on this subject,[9] case law from other Circuits indicates the facts here do not involve a discriminatory compensation decision or practice. For example, the Tenth Circuit has explained that the Lilly Ledbetter Fair Pay Act only applies to claims involving "unequal pay for equal work" or, in other words, "a discriminatory pay disparity" between the plaintiff and a similarly situated employee outside of her protected class. *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1181 (10th Cir. 2011); *see also Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 269 (2d Cir. 2015) ("A plaintiff must plead and prove the elements of a pay-discrimination claim to benefit from the Ledbetter Act's accrual provisions."); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988) (explaining that a pay discrimination claim requires a plaintiff to establish "that he or she did not receive equal pay for equal work."). This case does not involve, and, before the EEOC or HCRC, never involved, a claim that Dunning did not receive equal pay for equal work. Rather, this case involves Dunning being

---

[9]Unlike DOE, Dunning cites no case law from *any* court on this subject. *Compare* Dkt. No. 59 at 2-7, *with* Dkt. No. 58 at 14-16.

terminated and forced to return pay or benefits for giving birth. Therefore, the Lilly Ledbetter Fair Pay Act cannot save her claims.[10]

Third, in a manner again bereft of clarity, Dunning appears to argue that the time constraints in Section 2000e-5(e) should be tolled because one of DOE's employee's "admitted" DOE made "mistakes" and because "DOE's own extended internal process…bears on why Ms. Dunning's external filings took the form and timing that they did…." Dkt. No. 58 at 16-17. The evidence cited for the DOE employee's alleged statement, Dkt. No. 58-1 at ¶ 14, however, provides no support for the same. Moreover, it has no relevance at all as to whether the time constraints should be tolled. As for DOE's allegedly "extended internal process", it has no factual basis in this record. Specifically, no part of Dunning's concise statement of facts, Dkt. No. 58-1, concerns DOE's "internal process", let alone that it was extended or, more importantly, played some tangible role in delaying Dunning from filing with the EEOC. Therefore, the Court also rejects this argument as a reason for denying the motion for summary judgment.

In short, because DOE has established that Dunning's claims were not timely filed with the EEOC pursuant to Section 2000e-5(e), and Dunning has presented no

---

[10]Other flaws with this argument are that (1) Dunning never raised with the EEOC that her Form 5s were discriminatory, and (2) it has no bearing on the fact that Dunning failed to file the EEOC Charge within 30 days of HCRC's termination of her initial proceeding.

argument or evidence to controvert this record, DOE is entitled to summary judgment with respect to Claims 1-5.

**2. State Claims (Claims 6-7)**

In a footnote within the motion for summary judgment, DOE argues that Dunning's State claims are barred by sovereign immunity because it is an agency of the State of Hawai'i, and the State has not consented to being sued in Federal court for such claims. Dkt. No. 36-3 at 18 n.7. In response, Dunning argues that DOE should not be permitted to rely upon an "undeveloped footnote" to assert the defense of sovereign immunity, and DOE has failed to show an entitlement to such a defense. Dkt. No. 58 at 22-23. In reply, DOE cites case law for the proposition that the State tort claims are barred for the reason referenced and adds that it asserted this defense in its Answer. Dkt. No. 59 at 8 & n.5.

Upon review, DOE is entitled to sovereign immunity from Dunning's state tort claims for the following reasons. As an initial matter, the Eleventh Amendment to the U.S. Constitution provides as follows: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The U.S. Supreme Court has interpreted this language to prohibit suits against an unconsenting State by citizens of another State, by citizens or subjects of a foreign State, and by a State's

"own citizens". *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (quotation omitted). This immunity also applies to suits brought against a State's agencies or departments. *Id.* at 100.

In this light, the inquiry here is straightforward. It is not disputed that DOE is a department of the State of Hawai'i, entitled to the same Eleventh Amendment immunity as the State itself. *See Scott v. State of Hawai'i Dep't of Educ.*, 2009 WL 564709, at *10 (D. Haw. Mar. 5, 2009) (citing cases and finding DOE, as a State agency, entitled to immunity under the Eleventh Amendment). Further, the State of Hawai'i has not consented to suit in Federal court with respect to claims brought under State tort law, like Claims 6-7. Instead, the State has only consented, under certain circumstances, to suit in *State court* with respect to such claims. Haw. Rev. Stat. § 662-3. Dunning's assertion, that this limited consent in some way includes State tort claims brought in Federal court pursuant to supplemental jurisdiction, is simply misplaced, given that the State's consent must be "unequivocally expressed", which is clearly not the case here. *See Pennhurst*, 465 U.S. at 99; *see also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (explaining that the Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts."). Dunning is also misplaced in asserting that DOE may have "waive[d]" the defense of sovereign immunity, given that DOE raised the defense in its Answer. Dkt. No. 12 at 6; *see*

*Ashker v. Cal. Dep't of Corr.*, 112 F.3d 392, 394 (9th Cir. 1997) (concluding that a sovereign-immunity defense had not been waived because it had been raised in the defendants' answer and pretrial statement, even though the defendants did not otherwise litigate the defense in the district court and litigated it for the first time on appeal).

Because DOE properly raised the defense of sovereign immunity and because it clearly applies to the State claims brought here, DOE is entitled to summary judgment with respect to Claims 6-7. The Court observes, however, that dismissal of these claims on this ground is *without prejudice*. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (explaining that the "Eleventh Amendment is a limit on federal courts' jurisdiction[]" and "[d]ismissals for lack of jurisdiction should be without prejudice so that a plaintiff may reassert his claims in a competent court.").

## **CONCLUSION**

On July 26, 2022, Alexa Dunning had a *very good*—some might say, no better—reason for being away from work: she had given birth two days earlier. DOE, on the other hand, had *no* evident reason on this record for, among other things, terminating and withholding pay from Dunning *solely* because she missed work on July 26. Nonetheless, because Dunning did not timely pursue her claims for employment discrimination before the EEOC, DOE's motion for summary

judgment, Dkt. No. 36, is GRANTED with respect to Claims 1-5. Further, because the Eleventh Amendment protects DOE from Dunning's State tort claims in Federal court, the motion for summary judgment is GRANTED with respect to Claims 6-7 to the extent those claims are DISMISSED WITHOUT PREJUDICE.

The Clerk is instructed to enter Judgment and then close this case.

IT IS SO ORDERED.

DATED: November 5, 2026 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge